adapted to declare the construction and meaning of the law. It would have been easy and appropriate, if that alone was the design, to say that hereafter money so borrowed shall not be liable to the tax. My opinion, that the terms employed did not include money so borrowed, renders it unnecessary to do more than say that this further enactment is not inconsistent with that view, and may well have been passed in order to remove any doubt theretofore entertained on the subject.

I have not overlooked the suggestion in behalf of the defendant, that this construction of the statute enables persons having a very small capital to carry on a very large business of the kind now in question—buying stocks on commission, "carrying" them, by borrowing thereon the amount required to pay for them, and selling them when directed by the customer, and paying the loan without paying the specified tax on the money used for the purpose. This may be so. I do not know how large a capital may be necessary to the establishment of such a financial credit as will secure to a person or a firm a large patronage from stock dealers or speculators. But the answer is, that the statute does not declare money borrowed for the purposes of the ordinary and daily conduct of the business, taxable. Had it been intended to tax such money, it was easy to say so. If the evil urged required remedy, it was easy to correct it, and it was for the legislature to correct, and it is not for the courts to give a forced and unnatural meaning to language, for that purpose.

The result of these considerations is, that the tax levied and collected from these plaintiffs in both cases was illegal, and the necessary preliminary proceedings, protest, appeal, and suit in due season, having, as admitted, been taken by them, they are entitled to recover.

3. As to the firm of Clark, Dodge & Company, the plaintiffs in the first of the above named cases, I am of opinion that they were liable to the tax levied and collected, each month, upon the average amount of the deposits of money subject to payment by check or draft. That they received such deposits in their business is distinctly proved, and the amounts are shown, entirely distinct from moneys borrowed, in the statements put in evidence. The circumstance that they allowed and paid their depositors interest, at some agreed rate, does not affect this question. The same is done in favor of depositors by very many duly incorporated banks in this city and elsewhere. But, securities or money left with either of the above plaintiffs as a pledge for their indemnity, to save them from loss on purchasing or selling stocks for the customer, are not of this character. They are not "moneys subject to payment by check or draft," in any just sense of those terms, as

applied to moneys deposited with a bank or banker.

Judgments in these cases must be entered for the plaintiffs, in conformity with this opinion. The amounts are mere matters of computation, from the statements of the taxes paid, admitted and used on the trial. If the parties do not agree on the computation, I will settle the amount on entering the judgment herein.

[NOTE. "The term 'capital' employed by a banker in the business of banking, in the 110th section of the revenue act of July 15, 1866, does not include moneys borrowed by him from time to time temporarily, in the ordinary course of his business. It applies only to the property or moneys of the banker set apart from other uses and permanently invested in the business." Mr. Justice Field, in Bailey v. Clark, 21 Wall. (88 U. S.) 284, on error by the plaintiff to the circuit court.]

CLARK (BEECHER v.).  See Case No. 1,223.

## Case No. 2,815.

### CLARK v. BININGER.

[Cited in Lamson v. Burton, Case No. 12,285. Nowhere reported; opinion not now accessible.]

CLARK (BOWEN v.).  See Case No. 1,721.

## Case No. 2,816.

### CLARK v. BURNHAM.

[2 Story, 1.] [1]

Circuit Court, D. Maine.  May Term, 1837.

STATUTE OF FRAUDS — MEMORANDUM — SUBSTITUTION OF PAROL AGREEMENT—RESULTING TRUST.

1. Where an agreement was made for the purchase of lands, and the following paper was given.—"Ellsworth, Dec. 15, 1834. Received of Daniel Burnham and Cyrus S. Clark, one thousand dollars, to be accounted for if they shall furnish me satisfactory security for certain lands on the Naraguagus river, say one hundred and nineteen thousand acres, for one hundred and thirteen thousand dollars, on or before Friday morning next; otherwise to be forfeited. John Black,"—it was held to be a sufficient memorandum of the terms of sale, under the statute of frauds.
[Cited in Williams v. Morris, 95 U. S. 456.]

2. By a parol agreement having been subsequently substituted therefor, by which the said land was transferred, by deed, to other persons than those therein mentioned, and a bill being brought by Clark to recover a certain part from the grantees, as a resulting trust to him, it was held, that the written memorandum only created a presumption of a resulting trust, which could be rebutted by proof; and proof being given, that Clark did not advance any portion of the purchase money, as stated in the memorandum, it was held, that he was not entitled to a resulting trust, and that the contract was within the statute of frauds.
[Cited in Smith v. Burnham, Case No. 13,019.]

Bill in equity. The bill, in substance, states, that about December 15th, 1834, Clark and Burnham entered into an informal con-

---

[1] [Reported by William W. Story, Esq.]